**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**ALEJANDRO ABRAHAM LOPEZ, JR.,**
*Individually and on behalf of all*
*similarly situated individuals,*

|  |  |  |
|---|---|---|
| | **Plaintiff,** | |
| **v.** | | **Civil Action No. 1:12-cv-902 (LO/JFA)** |

**TRANS UNION, LLC,**
                          **Defendant.**
_____

**ALEJANDRO LOPEZ, SR.,**
*Individually and on behalf of all*
*similarly situated individuals,*

|  |  |  |
|---|---|---|
| | **Plaintiff,** | |
| **v.** | | **Civil Action No. 1:12-cv-1325 (LO/JFA)** |

**TRANS UNION, LLC,**
                          **Defendant.**

## CONSOLIDATED AMENDED CLASS COMPLAINT

COMES NOW the Plaintiffs, **ALEJANDRO A. LOPEZ, JR.**, and **ALEJANDRO A. LOPEZ, SR.,** (hereafter collectively the "Plaintiffs" or as *Lopez, Jr.* and *Lopez, Sr.*) by counsel, *individually and behalf of all similarly situated individuals*, and for their Consolidated Amended Complaint against the Defendant, allege as follows:

### PRELIMINARY STATEMENT

1.      This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act).

2.      Trans Union, one of the "Big 3" consumer reporting agencies, has a long history of consumer complaints and lawsuits alleging (and establishing) that it unreasonably mixed the

credit files and information of one consumer with the credit reports of another consumer. This mixed file problem is caused by the Defendant's overly broad matching criteria used to sort credit data into a Trans Union credit file.

3.      In this case, representative of numerous others, Trans Union combined or mixed the credit files of a father and son even though their names were not entirely the same, their dates of birth were different, their addresses were different, their social security numbers were different and they were regularly identified with their generational tag.

4.      Plaintiffs allege individual claims under the FCRA, 15 U.S.C. §§1681e(b) and 1681i for Trans Union's failure to reasonably ensure the maximum possible accuracy of their credit reports and to investigate and correct the Plaintiff's credit files when they disputed the inaccuracies to Defendant.

5.      Plaintiffs also allege a class claim pursuant to 15 U.S.C. § 1681b for Trans Union's impermissible disclosure of the credit reports of each Plaintiff and putative class member to creditors and other users who did not request such report, but instead requested the credit report of another person.

## JURISDICTION

6.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681p. Venue is proper as Defendant maintains its registered offices within the boundaries for the Eastern District of Virginia and significant parts of the Plaintiffs' claim occurred in Virginia. Both Plaintiffs reside in this District and Division.

## PARTIES

7.      The Plaintiffs are natural persons and residents of the State of Virginia. Plaintiffs are "consumers" as defined by 15 U.S.C. §1681a(c).

2

8.     Upon information and belief, **TRANS UNION, LLC**. ("*Trans Union*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

9.     Upon information and belief, *Trans Union* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f).  Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

10.    Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

### Facts Regarding Alejandro Abraham Lopez, Jr.

11.    On or about July 20, 2010 *Lopez, Jr.* obtained a copy of his *Trans Union* Consumer Disclosure.  Upon his review, *Lopez, Jr.* discovered that *Trans Union* was reporting 25 credit accounts that did not belong to him.  In addition *Trans Union* was reporting inaccurate personal identifying information that did not belong to *Lopez, Jr.*

12.    *Lopez, Jr.* disputed the inaccurate identifying information and credit accounts with *Trans Union* and advised that the accounts did not belonging to him.  Upon receipt of the Trans Union Investigation Report dated August 12, 2010, *Lopez, Jr.* was shocked to learn that after the investigation, one of the disputed accounts, *Metlife,* had been "verified" by the creditor as belonging to him and would remain on his credit report.  This verification was inaccurate, as *Lopez, Jr.* had never opened the reported credit account with *Metlife*.

13.    *Lopez, Jr.* made a second dispute to *Trans Union* regarding the *Metlife* credit account.  On or about September 3, 2010 *Trans Union* forwarded its Investigation Results to

*Lopez, Jr.* that advised that the *Metlife* account had now been deleted as a result of his second dispute.

14.     In January 2012, *Lopez, Jr.* made application to refinance his mortgage loan as a result of the low interest rates available.

15.     During the refinancing process, *Lopez, Jr.* received and reviewed a copy of his credit report with *Trans Union* and learned that *Trans Union*, within the past two years, had provided his credit reports, without a permissible purpose to numerous entities with whom he had no relationship or contact. *Lopez, Jr.* also learned that *Trans Union* was reporting three more credit accounts that did not belong to him (*Wells Fargo Home Mortgage, Capital One and Citicards CBNA).*

16.     In January, 2012, *Lopez, Jr.* discovered that *Trans Union* had furnished his consumer reports to *Metlife, Total Credit Services, Southstar, Credco, Gateway, Kroll, Citibank (SEARS/CBNA and THE HOME DEPOT-CITI NA), Fannie Mae, Capital One, FIA,* and *Discover. ("Impermissible Users").*

17.     The *Impermissible Users* did not have a lawful purpose to obtain and use the Plaintiff's credit reports.

18.     These Reportings were false.  *Lopez, Jr*. never signed any application for credit for any of the disputed credit accounts and were never legally responsible for the repayment of these accounts.  Further, the Plaintiff never authorized the above entities to receive his credit reports.

19.     On or about June 7, 2012 *Lopez, Jr.* forwarded his written dispute to *Trans Union* and advised that the credit accounts did not belong to him.  On or about June 29, 2012,

4

*Trans Union* forwarded its Investigation Results that advised *Lopez, Jr.* that all of the disputed accounts had been deleted.

20.      *Trans Union* received, but ignored the Plaintiff's disputes and did refuse to delete the inaccurate information regarding the accounts from the Plaintiff'' credit file.

21.      *Trans Union* had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the information.

22.      On numerous occasions, *Trans Union* furnished the Plaintiff's consumer reports to multiple entities without permissible purpose and without reasonable procedures to obtain verification that these entities had a permissible purpose to obtain the Plaintiff's consumer report.

### Facts Regarding Alejandro Lopez, Sr.

23.      On or about February 1, 2012 *Lopez, Sr.* obtained a copy of his *Trans Union* Consumer Disclosure.  Upon his review, *Lopez, Sr.* discovered that *Trans Union* was reporting credit accounts that did not belong to him.  In addition *Trans Union* was reporting his son's name, birthday, address and previous employer.

24.      On or about February 1, 2012, *Lopez, Sr.* discovered that *Trans Union*, within the past two years, had provided his credit reports, without a permissible purpose to *GECRB, Credco, United One, LexisNexis, Unitrin* and *Sterling ("Impermissible Users")* on multiple occasions**.**

25.      On or about February 1, 2012, *Lopez, Sr.* forwarded a written dispute letter to *Trans Union* and disputed the inaccurate personal identifying information and six credit accounts.  *Lopez, Sr.* advised that the credit accounts did not belong to him.  Upon receipt of the *Trans Union* Investigation Report dated March 1, 2012 *Lopez, Sr.* was advised that the six disputed credit accounts had been deleted. *Trans Union* further stated that *Lopez, Sr.'s* personal

5

identifying information had been updated.  However, **Trans Union** was still reporting **Lopez, Sr.'s** sons name and birthday, even though his dispute letter listed the **Lopez, Sr.**'s correct identifying information.

26.    The **Impermissible Users** did not have a lawful purpose to obtain and use the Plaintiff's credit reports.

27.    These Reportings were false.  **Lopez, Sr**. never signed any application for credit for any of the disputed credit accounts and were never legally responsible for the repayment of these accounts.  Further, the Plaintiff never authorized the above entities to receive his credit reports.

28.    **Trans Union** had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the information.

29.    On numerous occasions, **Trans Union** furnished the Plaintiff's consumer reports to multiple entities without permissible purpose and without reasonable procedures to obtain verification that these entities had a permissible purpose to obtain the Plaintiff's consumer report.

**Co-Defendant Declarations Establish that Trans Union Unlawfully Furnished Reports**

30.    Upon the filing of these consolidate actions, Plaintiffs, by counsel, were able to discover that none of the co-Defendants previously accused of having impermissibly requested the credit reports of Lopez, Jr. ever did so.  Each has confirmed under oath that they specifically requested the credit report only of Lopez, Sr.

a.    In his November 27, 2012 declaration, William Blayney, an employee of Discover Products, Inc., a servicing subsidiary of Discover Bank testified that "[i]n January of 2004, Alejandro Lopez, Sr. opened a credit card account with Discover. On or about January 11, 2012, Discovery sent a request to Trans Union requesting the credit information regarding

6

Alejandro Lopez, Sr... In response to the request, Discover received credit information regarding Alejandro Lopez, Jr., instead of the correct party, Alejandro Lopez, Sr." *See* Blayney Decl. ¶¶ 2-3, attached to the Amended Consolidated Complaint as EXHIBIT 1.  Mr. Blayney further testified that "the credit information received by Trans Union regarding Alejandro Lopez, Jr. was not requested by Discover." *See* Blayney Decl. ¶ 3.

      b.     Similarly, David Owens ("Mr. Owens"), a Settlement Operations Director for Federal Home Loan Mortgage Corporation ("Freddie Mac") testified on November 28, 2012 that "on or about January 14, 2011, Freddie Mac ordered from Trans Union, LLC ("Trans Union") credit information for [Lopez, Sr.]" and his wife, Norma Lopez. *See* Owens Decl. ¶ 4, attached to the Amended Consolidated Complaint as EXHIBIT 2.  Mr. Owens further testified that "Freddie Mac requested credit information by inputting the borrowers' social security number, names, and the primary borrower's address into the Borrower Credit Assessment Service system," and that "Freddie Mac did not provide to Trans Union the name or social security number of [Lopez, Jr.]… or request credit information for [Lopez, Jr.] in its January 14, 2011 credit inquiry with Trans Union." *See* Owens Decl. ¶ 5.

      c.     In his December 10, 2012 declaration, Dale Walker, a Business Procedures Analyst for MetLife Home Loans testified that Lopez, Sr. applied for credit with MetLife Bank on or around July 5, 2012. *See* Walker Decl. ¶ 5, attached to the Amended Consolidated Complaint as EXHIBIT 3. Mr. Walker further testified that after Lopez, Sr. applied for credit "MetLife Bank requested a consumer report from Trans Union regarding Alejandro Lopez, Sr., and Trans Union provided a consumer report regarding Alejandro Lopez, Jr.… In making this request, MetLife Bank provided Trans Union with Alejandro Lopez, Sr.'s name, address, Social

Security number, and date of birth. At that time, MetLife Bank made no such inquiry to Trans Union regarding the credit file of Alejandro Lopez, Jr." Walker Decl. ¶ 6.

d.      In his February 4, 2013 declaration, Larry A. Parrott, a Vice President at FIA Card Services, N.A. testified that in January 2012, "FIA made a credit inquiry concerning Alejandro Abraham Lopez, Sr. In doing so, FIA provided the full name and social security number of Alejandro Abraham Lopez, Sr., ending in 6359, to Trans Union." *See* Parrott Decl. ¶ 5, attached to the Amended Consolidated Complaint as EXHIBIT 4. Nevertheless, Trans Union provided FIA Card Services with Lopez, Jr.'s credit report even though "FIA's records do not reflect that [Lopez, Jr.]… has any relationship with FIA." *See* Parrott Decl. ¶ 6.

e.      In his November 7, 2012 declaration, Richard Napolitano, a Senior Legal Specialist at Capital One Services, LLC testified that "Capital One's records do not reflect any Capital One accounts ever being opened in the name of Alejandro Abraham Lopez, Jr….," and "Capital One's records do not reflect any credit inquires conducted by Capital One in connection with Alejandro Abraham Lopez, Jr." *See* Napolitano Decl. ¶¶ 5-6, attached to the Amended Consolidated Complaint as EXHIBIT 5.

f.      Additionally, Shawn Ekblad ("Mr. Ekblad"), a Compliance Officer for Kroll Factual Data, Inc. ("KFD"), testified that Gateway Funding placed an order with KFD for a residential credit report concerning Lopez, Sr. by entering his first and last name, his address, and Social Security Number. *See* Ekblad Decl. ¶4, attached to the Amended Consolidated Complaint as EXHIBIT 6.  Mr. Ekblad further testified that KFD ordered from Equifax, Experian, and Trans Union certain credit history relative to Lopez, Sr. and that KFD submitted to the consumer reporting agencies the exact same information provided to KFD by Gateway. *See* Ekblad Decl. ¶ 5. And in response, that Trans Union provided to KFD, credit history relative to

Lopez, Jr., even though KFD never requested information concerning Lopez, Jr. *See* Ekblad Decl. ¶ 6.

g.      On February 8, 2013, Angela Barnard ("Ms. Barnard"), a Director of Operations for Corelogic Credco, LLC. ("LLC"), testified that "Credco obtains consumer reports from the credit bureaus (Experian, Equifax, and Trans Union) and resells them to potential creditors that are Credco clients" and that "Credco resold a number of consumer reports about Junior and Senior…." *See* Barnard Decl. ¶4, attached to the Amended Consolidated Complaint as EXHIBIT 7. Ms. Barnard further testified that "[w]hen a creditor asks Credco to furnish a consumer report about an individual, the creditor supplies Credco with that individual's personal identifiers: *e.g.*, his or her name, address, social security number, date of birth, etc." *See* Barnard Decl. ¶ 6. When Credco receives this information, "Credco's computer system automatically forwards the personal identifiers that were supplied by the creditor to the three credit bureaus; [and] receives consumer reports from those bureaus in electronic form…." *See* Barnard Decl. ¶ 7. To that end, Ms. Barnard testified that "Credco supplied each of the three credit bureaus with correct information about the subject of the report (Junior or Senior) exactly as Credco received that data from Credco's client; Credco asked the credit bureaus to provide Credco with data pertaining to that subject only; and Credco's report accurately provided the data that Credco had received from each bureau about that subject. If Credco's tri-merge reports… contain data that did not pertain to the subject of the report (e.g., to the extent that the reports about Junior contained data about Senior, or vice versa), it is because one or more of the credit bureaus supplied data in error." *See* Barnard Decl. ¶ 16.

h.      On September 14, 2012, Carlos Banegar, an employee of SouthStar Mortgage, LLC also provided a letter to Plaintiff's counsel indicating that it had "never done business with

Mr. Alejandro Abraham Lopez, Jr. and [it] did not pull his credit." Attached to the Amended Consolidated Complaint as EXHIBIT 8 is the September 14, 2012 correspondence from Mr. Banegar to Plaintiff's counsel.

31.     Upon the filing of these consolidate actions, Plaintiffs, by counsel, were able to discover that none of the co-Defendants previously accused of having impermissibly requested the credit reports of Lopez, Sr. ever did so.  Each has confirmed under oath that they specifically requested the credit report only of Lopez, Jr.

a.     On February 1, 2013, Joe Ott, the Director of New Account Lending at Sterling Jewelers, testified that Lopez, Jr. applied for credit with Sterling Jewelers on or about November 9, 2008. *See* Ott Decl. ¶¶ 1, 4, attached to the Amended Consolidated Complaint as EXHIBIT 9. Mr. Ott further testified that "Sterling requested from Equifax LLC, a credit report for [Lopez, Jr.], SSN [redacted], with a date of birth [redacted], based on information Sterling had received from the applicant on a credit application." *See* Ott Decl. ¶ 5. Because Lopez, Jr. was provided credit with Sterling, Mr. Ott testified that "[a]s part of its regular business practices, Sterling purchases credit attributes for all of its open accounts for account maintenance purposes. Those credit attributes are provided by TransUnion." *See* Ott Decl. ¶ 7. In doing so, Sterling "has requested credit attributes for [Lopez, Jr.], SSN [redacted], with a date of birth [redacted] in connection with the maintenance of its account at various times since 2009. Sterling purchased these credit attributes by using PGP encrypted files which are passed between Trans Union and Sterling using file transfer protocol requiring a user name and password. Based upon Sterling's records, Sterling has never submitted a request for credit information of [Lopez, Sr.], SSN [redacted], from Trans Union or any other credit bureau." *See* Ott Decl. ¶¶ 7-8. Despite this, Lopez,

10

Sr.'s credit report confirms that Trans Union provided Lopez, Sr.'s credit information in connection with Sterling's maintenance of Lopez, Jr.'s credit account.

b.      On February 11, 2013, Janet A. Binongcal, an Assistant Vice President with LandSafe Closing Services, testified that LandSafe's records reflect that two credit inquiries were made concerning Lopez, Sr. in April 2010. *See* Binongcal Decl. ¶ 3, attached to the Amended Consolidated Complaint as EXHIBIT 10.  In doing so, Ms. Binongcal further testified that Landsafe provided the full name and social security number ending in [redacted] to the credit bureaus." *Id*. Even though they provided Lopez, Sr.'s information, Lopez, Jr.'s Trans Union credit report confirms that LandSafe was provided with Lopez, Jr.'s credit file. Nevertheless, Ms. Binongcal testified that "LandSafe's records do not reflect any credit inquires for Alejandro Abraham Lopez, Jr. in April 2010 or otherwise." *Id*. at ¶ 4.

c.      On February 13, 2013, Shirley Biagioli, a supervisor with the Credit Reporting Department of United One Resources, Inc. ("United One") testified that United One placed an order for a tri-merged credit report concerning Lopez, Jr. and Marcella Diaz Hernandez. *See* Biagioli Decl. ¶ 3, attached to the Amended Consolidated Complaint as EXHIBIT 11.  In doing so, United One provided personal identifiers regarding Lopez, Jr., including his first, middle and last name, his address, birth date and social security number. Biagioli Decl. ¶ 4. Subsequent to the report, Lopez, Jr.'s lender requested additional information, in an attempt to verify whether the mortgage reported by Trans Union belonged to him. Biagioli Decl. ¶ 6. Ms. Biagioli testified that "United One independently verified that the mortgage (as reported only by Trans Union) was not that of the customers' and United One updated the report and added a comment this account (mortgage) did not belong to the consumers, and then forwarded the report back to [Lopez, Jr.'s lender]." Biagioli Decl. ¶ 6. A review of the Trans Union credit file for Lopez, Sr.

as of February 2012 confirms that Trans Union actually provided Lopez, Sr.'s credit file to United One instead of Lopez, Jr.

       d.      On February 15, 2013, Maria Reeves, an Operations Analyst with Wells Fargo's Department of Credit Bureau Dispute Resolutions, testified that Wells Fargo's records show a closed credit card account belonging to only Lopez, Jr. with the Social Security number ending in [redacted]. *See* Reeves Decl. ¶ 3, attached to the Amended Consolidated Complaint as EXHIBIT 12.  Ms. Reeves further testified that "[b]ased on the credit reporting available to Wells Fargo Bank, Transunion is reporting the above referenced credit card account under the social security number belonging to [Lopez, Jr.] with the last four digits ending [redacted] in addition to [Lopez, Sr.] with the last four digits ending in [redacted]." *See* Reeves Decl. ¶ 4.

### Trans Union's Double Standard and Willful Misconduct

32.      In each of these instances, ***Trans Union*** matched the creditor inquiry (request for a credit report) using very broad matching rules.  The Plaintiffs, of course, have similar names. Lopez is common, just as would be Rodriquez, Smith, Patel or Lee.  But they each have different generational identities (Jr. versus Sr.), dates of birth, and social security numbers.  They each have different reported residences and shared only one during the time period in which the son lived with his parents.

33.      However, these lax thresholds for matching do not cut both ways.  When a creditor requests a consumer report, ***Trans Union*** will furnish a report and information matched to it even with just a name and address.  In contrast, if the Court or any consumer requests their report, ***Trans Union*** will impose substantial exact match barriers and will not furnish a report that is not a 100% match to full name, address, date of birth and social security number.

34.     While *Trans Union* claims that partial matches are reasonable because of possible creditor transcription error – a theoretical typo transposing two social security digits – Defendant does not possess any actual research or data to support its contrived risk of error.

35.     In contrast, *Trans Union* has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

36.     As early as 1992, the Attorneys General of seventeen states were forced to file a lawsuit against *Trans Union* because of its conduct in connection with mixing consumer credit files. Attached to the Amended Consolidated Complaint as EXHIBIT 13 is Consent Order, dated October 26, 1992 (the "Consent Order") from the lawsuit filed against Trans Union.  In settling the enforcement action brought by the AGs, *Trans Union* agreed to make the following practice changes:

> 1. *Implement* or continue to utilize and maintain reasonable *procedures to avoid the occurrence or reoccurrence of Mixed Files*.1
>
> …
>
> 3. Analyze incoming data submitted by Subscribers to Trans Union as well as historical statistics in an attempt to detect data format errors, programming errors, or other inaccuracies, and take such corrective action with respect thereto as may be appropriate.
>
> 4. *Take reasonable measures to prevent reporting of information that is not likely to pertain to the Consumer* who is the subject of the Report and to prevent duplicate listings of an account with the same member number, opening date and consumer account number.
>
> …
>
> 5. [a]dvise their Subscribers, that they shall attempt to (i) *obtain Full Identifying Information from Consumers*; (ii) use, when provided by the Consumer, Full Identifying Information when reporting Credit Information to Trans Union; and

---

1 The October 26, 2012 Consent Order defines Mixed File as "a Consumer Report in which some or all of the information pertains to a person or persons other than the person or persons who is/are the subject of the Consumer Report." Ex. 13, ¶ F.10.

(iii) *use Full Identifying Information when requesting Consumer Reports*, except where a reliable and accurate alternative methodology is utilized for requesting Consumer Reports.2

Ex. 13 ¶¶ G.1-5 (emphasis added).

37.     ***Trans Union's*** computer system causes these mixes because Defendant, despite

the 1992 Consent Order, does not require or use full identifying information for a potential credit

grantor's inquiry.  It does this in order to sell more credit reports:

> Q.  What is the minimum indicative information that TransUnion will require from the user of the credit report, such as a bank, before it sells a credit report to that entity?
>
> A.  Generally it's the consumer's first name, last name and current address.
>
> Q.  Okay.  The Social Security number is not required before a sale is conducted, correct?
>
> A.  That is correct.
>
> Q.  The date of birth is also not required, correct?
>
> A.  Correct.
>
> Q.  The name, first name could be a nickname, correct?
>
> A.  Yes.
>
> Q.  It could be just an initial, correct?
>
> A.  Yes.
>
> Q.  The first or last name does not need to match letter for letter, correct?
>
> A.  Correct.

*See* Romanowski Dep. 42:14-43:9, July 10, 2009. Attached as EXHIBIT 14 is the pertinent

---

2 "Full Identifying Information" as defined in the Consent Order as the "full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number." Ex. 13, ¶ F.8.

portion of Ms. Romanowski's deposition.  Thus, during an "inquiry" (or a purportedly new application for credit) *Trans Union* could mix the files of two consumers with similar personal identifying information because it does not require or use full identifying information.

38.   Trans Union knows that their computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file".  *See* Romanowski Dep. 10:7-13:23.

39.   *Trans Union* has even been sued repeatedly on account of having mixed consumer files. *See, e.g., Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001); *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir. 1995); *O□Conner v. Trans Union Corp.,* Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union*, LLC, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union*, LLC, Civ. No. 3:11-cv-1317 (D. Conn. Aug. 17, 2011). Numerous mixed file cases have been brought in this District.

40.   *Trans Union* knowingly chooses to ignore the Attorneys General consent decree and other notice of its mixed file failure.  It does so even though it already possesses a simple, easy and inexpensive means to correct and avoid the problem.  *Trans Union* could instead use its "do not merge" procedure and match only with correct social security numbers and dates of birth.  As the United States District Court for the Eastern District of Pennsylvania explained:

> When a file has a "do not merge" tag placed on it then digit-for-digit matching of all nine digits of a social security number are required. Implementing the "do not merge" procedure only takes a few seconds, and it "involves the mere click of a button on a computer screen."

*Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 284 (E.D. Pa. 2010).

41.   *Trans Union* has been previously warned of its FCRA misconduct.  The

Pennsylvania federal court cautioned Defendant: "Given Defendant's general knowledge of the

mixed file problem and Defendant's failure to act to ensure these problems did not continue, a

jury could reasonably find that Defendant acted in reckless disregard and summary judgment

should be denied."  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281, 289 (E.D. Pa. 2010).  And

United States District Court Judge Payne responded to *Trans Union's* counsel in a different

FCRA inaccuracy case:

> THE COURT: Look, it's time that you-all came to realize that when a Court tells
> you something you have to realize it, accept it, and do something about it.  If you
> don't, you're in trouble.  It's time that your client understood that, and that's what
> he's trying to prove.  And if you don't do it, you get punished for doing it.  That's
> just the way life is.

*Mullins v. TransUnion*,  3:05cv888,(E.D. Va. 2006) (Emphasis added).

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681b
## CLASS ACTION

42.   Plaintiffs reiterate and incorporate the allegations contained in the paragraphs

above as if fully set out herein

43.   **The Class.** Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs

bring this action for themselves and on behalf of a class (the "Class") initially defined as follows:

> All natural persons, for whom Trans Union's records note that a credit report was
> furnished to a third party on or after February 11, 2008 who requested a credit
> report and where that third party provided a nine digit social security number, but
> where Trans Union furnished in the credit report file data that matched to a
> different nine digit social security number.

44.   **Numerosity.  FED. R. CIV. P. 23(a)(1).**  On information and belief, the Plaintiffs

allege that Class members are so numerous that joinder of all is impractical. The names and

addresses of the Class members are identifiable through documents maintained by the

16

Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. ***Trans Union*** has previously testified that it receives thousands of consumer complaints of mixed file problems.  Plaintiffs' counsel alone represent and have represented numerous consumers facing the same problem.

45**.** **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, among other things:

a. Were ***Trans Union's*** procedures for matching credit files and data based on unmatched social security numbers is unreasonable?

b. Is ***Trans Union's*** unmatched social security number procedure to furnish a consumer report sufficient for it to obtain "reason to believe" that the user to whom it was furnishing the report "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished[.]"?

c. When ***Trans Union*** furnishes a consumer report using its unmatched social security number procedure, does it have "reasonable grounds for believing that the consumer report will not be used for a purpose" listed at 15 U.S.C. § 1681b?

d. Were ***Trans Union's*** FCRA violations willful?

e. If ***Trans Union's*** FCRA violations were willful, what is the proper damage measure per violation?

f. If ***Trans Union's*** FCRA violations were willful, what is the proper punitive damage measure?

46. **Typicality. FED. R. CIV. P. 23(a)(3)).**  Plaintiffs' claims are typical of the claims

17

of each Class member.  Plaintiffs are entitled to relief under the same causes of action as the other members of the Class.  Each class member suffered injury as a result of the same conduct and the same manner.

47.     **Adequacy. FED. R. CIV. P. 23(a)(4)).**  Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the members of the Class each seeks to represent; each has retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

48**.     Superiority. FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class and Subclass members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts.  It is also extremely unlikely that consumers would know that their reports were sold and revealed without a permissible purpose and sufficient to bring and prosecute such an action.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

49.     **Injunctive Relief Appropriate for the Class. FED. R. CIV. P. 23(b)(2).**  Class certification is appropriate because Defendant has acted on grounds generally applicable to the class members, making injunctive and declaratory relief appropriate.

50.     *Trans Union* violated the FCRA, 15 U.S.C. §1681b(a) as to the Plaintiffs and the Class by providing the Plaintiffs' consumer reports without a permissible purpose to do so.

51.     *Trans Union's* conduct, actions and inactions were willful, rendering *Trans Union* liable to the Plaintiffs and to the Class for statutory damages between $100 and $1,000 and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

52.     The Plaintiffs and the Class are entitled to recover costs and attorney's fees from *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681e(a)
### CLASS CLAIM

53.     Plaintiffs reiterate and incorporate the allegations contained in the paragraphs set forth above as if fully set out herein.

54.     *Trans Union* violated the FCRA, 15 U.S.C. §1681e(a) as to the Plaintiffs and as to the Class by providing the class member consumer reports without reasonable grounds for believing that the consumer reports would be used for a purpose listed in section 1681b.

55*.*     *Trans Union's* conduct, actions and inactions were willful, rendering *Trans Union* liable to the Plaintiffs and to the Class for statutory damages between $100 and $1,000 and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

56.     The Plaintiffs and the Class are entitled to recover costs and attorney's fees from *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

19

**COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACTS**
**15 U.S.C. §1681e(b)**
**INDIVIDUAL CLAIM**

57.     The Plaintiffs reiterate and incorporate the allegations contained in the paragraphs set forth above as if fully set out herein.

58.     *Trans Union* violated 15 U.S.C. §1681e(b) as to the Plaintiffs by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiffs' credit reports and credit files it published and maintained concerning the Plaintiffs.

59.     As a result of the conduct, actions and inactions of *Trans Union* violating 15 U.S.C. § 1681e(b), the Plaintiffs each suffered actual damages including without limitation, by example only and as described herein on Plaintiffs' behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

60.     *Trans Union*'s conduct, actions and inactions were willful, rendering *Trans Union* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Trans Union* was negligent entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

61.     The Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from *Trans Union*, in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT**
**§15 U.S.C. 1681i(a)**
**INDIVIDUAL CLAIM**

62.     Plaintiffs reiterate and incorporate the allegations contained in the paragraphs set forth above as if fully set out herein.

20

63.    *Trans Union* violated 15 U.S.C. §1681i(a) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from the Plaintiffs' credit file, by failing to provide to the furnishers all relevant information regarding the Plaintiffs' disputes, by failing to review and consider <u>all</u> relevant information submitted by Plaintiffs, and by failing to promptly delete the disputed inaccurate item of information from Plaintiffs' credit files or modify the item of information upon an accurate reinvestigation.

64.    As a result of the conduct, actions and inactions of *Trans Union* in violating 15 U.S.C. §1681i(a), the Plaintiffs each suffered actual damages including without limitation, by example only and as described herein on Plaintiffs' behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

65.    *Trans Union's* conduct, actions and inactions was willful, rendering *Trans Union* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, *Trans Union* was negligent entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

66.    The Plaintiffs are entitled to recover actual damages, punitive damages, statutory damages, costs and attorney's fees from *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

67.    As a result of the conduct, actions and inactions of *Trans Union*, the Plaintiffs each suffered actual damages including without limitation, by example only and as described herein on Plaintiffs' behalf by counsel:  credit damage, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

68.    *Trans Union*'s conduct, actions and inactions was willful, rendering *Trans Union*

liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, **Trans Union** was negligent entitling the Plaintiffs to recover under 15 U.S.C. §1681o.

69.     The Plaintiffs are entitled to recover actual damages, statutory damages, costs and attorney's fees from **Trans Union** in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, the Plaintiffs and the putative class members pray for relief as follows:

1.     An order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record to represent same;

2.     The creation of a common fund available to provide notice of and remedy Defendant's violations;

3.     Statutory and punitive damages for the class claims;

4.     Actual or statutory damages, and punitive damages for the individual claim;

5.     Injunctive and declaratory relief as pled;

6.     Attorneys' fees, expenses and costs;

7.     Pre-judgment and post-judgment interest as provided by law; and

8.     Such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**ALEJANDRO ABRAHAM LOPEZ, JR.,
and ALEJANDRO LOPEZ, SR.,**
*Individually and on behalf of all
similarly situated individuals,*

By_____/s/_____
                    Of Counsel

Leonard A. Bennett, Esq. (VSB #37523)
Susan Rotkis, Esq. (VSB #40693)
CONSUMER LITIGATION ASSOCIATES, P.C.

22

763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com
E-mail: srotkis@clalegal.com

Matthew J. Erausquin, Esq. (VSB # 65434)
Janelle E. Mason, Esq. (VSB # 82389)
Casey S. Nash, Esq. (VSB # 84261)
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:     (703) 273-7770
Fax:     (888) 892-3512
Email: matt@clalegal.com
Email: janelle@clalegal.com
Email: casey@clalegal.com

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 - Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@siplfirm.com
E-mail: aguzzo@siplfirm.com

*Attorneys for Plaintiff*

**Certificate of Service**

I hereby certify that on this 8th day of March, 2013, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:


Michael R. Ward, VSB #41133
MORRIS & MORRIS, P.C.
11 S. 12th Street, 5th Floor
P.O. Box 30
Richmond, VA   23218
(804) 344-8300 – Telephone
(804) 344-8359 – Facsimile
mward@morrismorris.com
*Counsel for Trans Union LLC*

Paul L. Myers, VSB #41133
STRASBURGER & PRICE, LLP
2801 Network Boulevard, Ste 600
Frisco, TX 75034
(469) 287-3903 - Telephone
(469) 227-6567 – Facsimile
Email: paul.myers@strasburger.com
*Counsel for Trans Union LLC*

J. Douglas Cutherbertson, VSB #41378
Jennifer L. Sarvadi, VSB # 47543
LECLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA 22314
(703) 647-5925 – Telephone
(703) 647-5975 – Facsimile
Email: douglas.cuthbertson@leclairryan.com
Email: jennifer.sarvadi@leclairryan.com
*Counsel for MetLife Home Loans, a division of MetLife Bank, N.A.*


_____/s/_____
Kristi Cahoon Kelly, VSB #72791

24

SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 - Telephone
(703) 591-9285 - Facsimile
E-mail:  kkelly@siplfirm.com
*Counsel for Plaintiff*