IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ALABAMA, STATE OF ARKANSAS, PEOPLE OF THE STATE OF CALIFORNIA, STATE OF CONNECTICUT, STATE OF FLORIDA, STATE OF IDAHO, STATE OF ILLINOIS, STATE OF MICHIGAN, STATE OF MISSOURI, STATE OF NEVADA, STATE OF NEW HAMPSHIRE, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF OHIO, COMMONWEALTH OF PENNSYLVANIA, STATE OF TEXAS, and STATE OF WASHINGTON, <br><br> Plaintiffs, <br><br> v. <br><br> TRANS UNION CORPORATION, <br><br> Defendant. | Civil Action No. <br><br> CONSENT ORDER <br><br> 92C 7101 <br><br> JUDGE ZAGEL |

## CONSENT ORDER

The parties have agreed to the entry of this Consent Order without trial or adjudication of any issue of fact or law. The parties having requested the Court to enter this Consent Order, it is by the Court this _26th_ day of _October_, 1992, ORDERED, ADJUDGED AND DECREED that:

A.    This Court has jurisdiction of the subject matter herein and of the parties hereto.

B.    Trans Union enters into this agreement based upon the shared concerns of Trans Union and the Attorneys General of the States regarding the protection of Consumers in the credit reporting process. Trans Union expressly denies that it has committed any violation of the Fair Credit Reporting Act or the

EXHIBIT
13

laws of any States. The States' execution of this agreement shall not constitute an approval by the States of any of Trans Union's past or future practices.

C. This Order shall not be enforceable by any third parties. Other than with respect to a proceeding or action in this court by any of the State(s) against Trans Union, neither this Order nor any provision thereof shall be offered or received in evidence against or on behalf of Trans Union in any action or proceeding of any kind or nature, or otherwise used as evidence or an admission of any fact or acknowledgement of liability of any kind by Trans Union.

D. This Order resolves any and all controversies between the States and Trans Union, in existence as of the date of entry of this Order, that relate to those credit reporting policies and practices of Trans Union, or actions taken by Trans Union in the credit reporting process, that are governed by this Order; and the States hereby release Trans Union from any and all liability for past violation of any laws regarding credit reporting policies or practices which are governed by this Order.

E. Any and all litigation arising from or interpreting this Order shall be conducted in the United States District Court for the Northern District of Illinois.

F. For purposes of this Order, the following definitions shall apply:

1.    "FCRA" refers to the Fair Credit Reporting Act (15 U.S.C. §§ 1681-1681t), as amended or as it may hereinafter be amended.

2.    The terms, "Person," "Consumer," "Consumer Report," "Consumer Reporting Agency," "File," and "Employment Purposes" have the meanings set forth in sections 603(b), (c), (d), (f), (g), and (h), respectively, of the FCRA, 15 U.S.C. §§ 1681a(b), 1681a(c), 1681a(d), 1681a(f), 1681a(g), and 1681a(h).

3.    "Affiliate" means any Consumer Reporting Agency not wholly owned by Trans Union to which Trans Union provides data base management services, either alone or in conjunction with other services.

4.    "B2/B3 Segments of the Metro Consumer Reporting Format" means credit information reported in twelve-month or twenty-four-month segments.

5.    "Credit Information" means the information Trans Union maintains bearing on any of the characteristics listed in section 603(d) of the FCRA with respect to any Consumer and from which Trans Union creates Consumer Reports.

6.    "Derogatory Information" means information in a Consumer Report or File indicating a bankruptcy adjustment plan, bankruptcy, liquidation, reorganization, charge off, collection account, charge off now paying, deed in lieu of foreclosure, foreclosure proceedings, government claim, late payment, paid by dealer, paid charge off, paid collection account, paid foreclosure, paid repossession, repossession, judgment or tax lien.

-3-

7.   "Designated Representatives" means a group of no more than five (5) of the States, a list of which shall be provided to Trans Union within ten (10) days of the date of this Order and which may be changed on ten (10) days' written notice to Trans Union.

8.   "Full Identifying Information" means full last and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number.

9.   "Market Area" means a defined geographic area serviced by a Trans Union bureau or an Affiliate, in which the data pertaining to Consumers residing in that area is owned by Trans Union or its Affiliate.

10.   "Mixed File" refers to a Consumer Report in which some or all of the information pertains to a person or persons other than the person or persons who is/are the subject of the Consumer Report.

11.   "Multiple File" refers to the case where multiple files on the same Consumer are contained within Trans Union's data base and the files are owned by different entities, as, for example, by both Trans Union and an Affiliate, or by two or more Affiliates.

12.   "Prescreening" means the process whereby Trans Union, utilizing Credit Information, compiles or edits for a customer a list of Consumers who meet specific credit criteria and provides this list to the customer or a third party (such as a

-4-

mailing service) on behalf of the customer for use in soliciting those Consumers for the purpose of offering credit to the Consumer.

13.   "States" means Alabama, Arkansas, California, Connecticut, Florida, Idaho, Illinois, Michigan, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Texas, and Washington.

14.   "Subscriber" means any person or entity who furnishes Credit Information to Trans Union or who requests or obtains a Consumer Report from Trans Union, excluding Consumers who seek or obtain disclosure of their Consumer Reports or Files, public record sources, and independent contractors who provide public record information.

15.   "Trans Union" means Trans Union Corporation, its successors and assigns, its divisions and subsidiaries which are engaged in credit reporting, and its officers and employees.

G.   Trans Union, in furtherance of the shared concerns of the Attorneys General of the States, agrees to comply with each State's deceptive practices act and will:

1.   Implement or continue to utilize and maintain reasonable procedures to avoid the occurrence or reoccurrence of Mixed Files.

2.   Implement or continue to follow reasonable procedures to assure maximum possible accuracy.

3.   Analyze incoming data submitted by Subscribers to Trans Union as well as historical statistics in an attempt to

detect data format errors, programming errors, or other inaccuracies, and take such corrective action with respect thereto as may be appropriate.

4. Take reasonable measures to prevent reporting of information that is not likely to pertain to the Consumer who is the subject of the Report and to prevent duplicate listings of an account with the same member number, opening date and consumer account number.

5. Within one hundred twenty (120) days of the date of this Order, advise its current Subscribers and Affiliates and, for four (4) years following the date of this Order, advise its new Subscribers and request its Affiliates to advise their Subscribers, that they shall attempt to (i) obtain Full Identifying Information from Consumers; (ii) use, when provided by the Consumer, Full Identifying Information when reporting Credit Information to Trans Union; and (iii) use Full Identifying Information when requesting Consumer Reports, except where a reliable and accurate alternate methodology is utilized for requesting Consumer Reports.

6. Within ninety (90) days of the date of this Order, advise its current Subscribers and request its Affiliates to advise their Subscribers, and for four (4) years following the date of this Order, advise its new Subscribers and Affiliates, that they shall, to the extent possible consistent with their respective practices, adopt the B2/B3 Segments of the Metro Consumer Reporting Format.

-6-

7.   Within thirty (30) days of the date of this Order, implement and then continue, in good faith, for the four (4) year period from the date of this Order, a program to provide Consumers toll-free access to Trans Union's consumer assistance personnel.

8.   Furnish a Consumer Report requested by a Consumer within four (4) business days after Trans Union receives a request from the Consumer (accompanied by proper payment, if necessary, and sufficient identification) for the Consumer Report. Deposit of the Consumer Report in the United States Mail in an envelope addressed to the Consumer at the address in Trans Union's file on the Consumer, with postage prepaid, within the time limit shall constitute compliance with this provision. However, in the event a Consumer requests that the Consumer Report be mailed to an address other than the address for the Consumer which is contained in the Consumer's file in Trans Union's data base, then Trans Union shall not be required to furnish the Consumer Report within four (4) business days of receipt of the request. In such cases Trans Union shall, within four (4) business days, request verification of the new address and shall furnish the Consumer Report within four (4) business days of receipt of required verification of the new address by depositing the Consumer Report in the United States Mail in an envelope addressed to the Consumer at the verified new address with postage prepaid. So long as Trans Union maintains reasonable procedures to comply with the provisions

of this paragraph, Trans Union shall not be in breach of this paragraph in any instance in which it is unable to furnish a Consumer Report as required herein due to factors beyond its control, nor shall Trans Union be in breach of this paragraph in any instance in which Trans Union voluntarily furnishes a Consumer Report to a Consumer under circumstances in which Trans Union is not required to furnish such a Consumer Report.

9.   Where a Consumer Report is based on data owned, in whole or in part, by an Affiliate, provide in the Consumer Report the name, address and telephone number of the Affiliate if it is the entity that will perform reinvestigation of any items of information, the completeness or accuracy of which is disputed by a Consumer.

10.   Institute and maintain procedures to ensure that in the case of any Consumer who may have Multiple Files, (i) the Consumer receives all Credit Information contained in all such Multiple Files whenever such Consumer requests his or her Consumer Report and provides Trans Union with the required data necessary to retrieve all such Multiple Files, and (ii) the Subscriber receives all Credit Information contained in all such Multiple Files which is normally disclosed to Subscribers, whenever such Subscriber requests the Consumer's Consumer Report and provides Trans Union with the required data to retrieve all such Multiple Files.   Trans Union shall advise Consumers at the time of disclosure of their report, or earlier, of any information necessary to obtain Multiple Files

-8-

on the Consumer, and shall disclose all such information, in all Files, without additional charge, within four (4) business days of receipt of the necessary information. Trans Union shall advise its Subscribers and Affiliates of any information which is necessary to obtain Multiple Files on a Consumer and advise them they should use such information, where provided by the Consumer.

11. Implement procedures designed to eliminate Multiple Files no later than June 30, 1993, including the deletion of Files in Market Areas other than the one in which the Consumer resides and merging of the information in such Files with the File for the Market Area where the Consumer resides. It is expressly understood that if a Consumer maintains more than one residence, (e.g., IL and FL), Multiple Files may exist for this Consumer and this fact shall not be deemed to be a violation of this Order. It is further understood that the merging process described is not automatic and shall occur upon an inquiry requesting the Consumer's File.

12. For a period of four (4) years from the date of this Order, furnish a Consumer with his or her Consumer Report without charge if:

    a. A Trans Union Subscriber has received a Consumer Report on the Consumer from Trans Union and has wholly or partially denied credit to the Consumer or increased the charge for such credit, based in whole or in part on such Consumer Report, within

-9-

sixty (60) days of the Consumer's request for the Consumer Report; or

b. Trans Union is given written evidence that an entity which received a Consumer Report on the Consumer issued by a Trans Union competitor has wholly or partially denied credit to the Consumer or increased the charge for such credit within (60) days of the Consumer's request for the Trans Union Consumer Report; provided, however, that Trans Union shall not be required to comply with this subparagraph when such Consumer requests arise in common from a significant error by such competitor in the acquisition or reporting of Credit Information of the competitor which uniformly and adversely affects a substantial number of Consumers, including the Consumer making the request. Further, Trans Union shall not be required to comply with the provisions of this paragraph where it has a reasonable good faith basis for believing that the Consumer was not denied credit or had not had the cost of such credit increased.

13. Beginning January 1, 1993, and continuing for four (4) years thereafter, subject to paragraph 12 above, make available to any Consumer disclosure of his or her Consumer Report for the amount of $8.00. Beginning January 1, 1994, this amount may be adjusted on January 1 of each year based

proportionally on changes in the consumer price index designated as "CPI-U-USA city average, 1982-84=100," with fractional changes rounded off to the nearest fifty cents.

14. Reinvestigate items of information contained in a Consumer Report, the completeness or accuracy of which is disputed by a Consumer, when the Consumer directly conveys the dispute to Trans Union and Trans Union does not have reason to believe the dispute is frivolous or irrelevant; and after the reinvestigation, record in its system the current status of such items of information.

a.   Trans Union shall use reasonable efforts in such reinvestigation which shall include:

i.   Completing any reinvestigation, including verifying, deleting, or modifying all disputed items in the Consumer's File, within thirty (30) days of receipt of the Consumer's dispute by Trans Union; provided, however, that if Trans Union in good faith cannot determine the nature of the Consumer's dispute, Trans Union shall attempt to determine the nature of the dispute by contacting the Consumer by depositing a notice to the Consumer in the United States Mail, or telephone within five (5) business days of receiving the Consumer's dispute, and complete its reinvestigation within thirty (30) days of receiving the Consumer's response if Trans Union in good faith can then determine the nature of the Consumer's dispute. Trans Union has provided the States with a copy of the letter it will send to Consumers when it cannot determine the nature of the Consumer's dispute as described in this paragraph and the States agree that the contents of this letter satisfy the requirements of this subparagraph. If Trans Union contacts the Consumer by

-11-

telephone rather than by mail as described
in this paragraph, Trans Union shall at a
minimum communicate to the Consumer the
same information contained in the letter
described in this paragraph;

   ii.  Providing to the source used to
verify the disputed information, or the
Subscriber who provided the disputed
information to Trans Union, the nature and
substance of the Consumer's dispute;

   iii.  Ensuring that every Consumer is
provided instructions on how to convey his
or her dispute to the Trans Union Consumer
Relations Center or the Affiliate that will
perform the reinvestigation and that a
Consumer need not meet any condition or
requirement not set forth in section 611 of
the FCRA (15 U.S.C. § 1681i);

   iv.  Upon receipt of information or
documentation from the Consumer which Trans
Union determines is reliable and/or
authentic and which supports the Consumer's
version of the disputed information,
correcting or deleting the disputed item;
provided, however, that Trans Union may
reinsert the information if it
reinvestigates the dispute by contacting
the source of the documentation or checking
the public record and verifying that the
documentation is not authentic or not
dispositive of the dispute, and provides to
the Consumer notification of such
verification and reinsertion of the
information and of his or her right to file
a dispute statement pursuant to Section 611
of the FCRA (15 U.S.C. § 1681i);

   v.  As to Consumer disputes concerning
Mixed Files, assigning such disputes, for
investigation and resolution, to Senior
Investigators who are experienced in
handling such disputes.  In such cases the
Investigator shall, as appropriate:  1)
pull all files which may be involved in the
dispute;  2)  fully verify disputed
tradelines to determine whether the
tradeline is owned by the Consumer in whose
file it resides; 3) make any changes,

deletions, or additions to correct the
Consumer's file and resolve the dispute;
and 4) for files which are found to be
mixed, prepare a summary of the problem and
forward this summary and hard copies of the
files involved to the systems support
division of the Data Processing Department,
for review and analysis by that Department
as to the need for corrective action.

vi.    When a Consumer disputes
information regarding a tax lien, judgment,
or other public record, using reasonable
procedures to ascertain the current status
of the disputed item from court or other
public records, including an examination,
performed by Trans Union or an independent
contractor, of such records to search for a
release of a tax lien or satisfied
judgment, or changing the disputed item to
the Consumer's version; and

vii.   Beginning six (6) months from
the date of this Order, providing the
Consumer, upon his or her request, with the
name and address of the source of the
disputed Credit Information, if the
reinvestigation has not resulted in
deletion of the disputed Credit Information
or a change to the Consumer's version. (In
the case of public record information, the
government repository of the public record
shall be provided to the Consumer.)

b.   Trans Union shall maintain a system or

methodology under which the single Trans Union bureau or

the Affiliate where the Consumer resides shall have the

primary responsibility to conduct a reinvestigation and

take corrective action with respect thereto as to all

Consumer Files for the Consumer, including Files

maintained or owned by a Trans Union bureau or Affiliate

outside of the Market Area where the Consumer resides.

c.   So long as Trans Union maintains reasonable procedures, including procedures for referring or transferring disputes received at offices other than the office at which the reinvestigation will be performed, to comply with the provisions of paragraph 14.a., Trans Union shall not be deemed in violation of such provisions in any instance in which Trans Union is unable to comply with such provisions due to factors beyond its control.

d.   Beginning three (3) months from the date of this Order, Trans Union shall ensure that all correspondence to Consumers is dated.

15.   If Trans Union concludes a Consumer's dispute is frivolous or irrelevant and declines to reinvestigate the dispute, notify the Consumer, within seven (7) business days of the day on which Trans Union receives such dispute, of Trans Union's refusal to reinvestigate and the specific reasons for concluding the dispute is frivolous or irrelevant; provided, however, that the provisions of paragraph 14.c. above shall also apply to this paragraph.

16.   For a period of four (4) years from the date of this Order, upon conclusion of the reinvestigation of information, the completeness or accuracy of which was disputed by a Consumer:

a.   Provide the Consumer with the current correct version of his or her Consumer Report as determined by Trans Union; and

-14-

b. If the information has not been changed to the Consumer's version, notify the Consumer of his or her right to file a statement in accordance with section 611 of the FCRA (15 U.S.C. §1681i) setting forth the nature of the Consumer's dispute and that Trans Union will include the statement or a codification or summary of it in any subsequent Consumer Report containing the information the Consumer has disputed.

17. Beginning June 30, 1993, maintain reasonable procedures so that information disputed by a Consumer, which is deleted as inaccurate or unverifiable upon reinvestigation, does not subsequently appear on Consumer Reports pertaining to that Consumer, including but not limited to procedures so that Derogatory Information or other information deleted from a File as a consequence of a Consumer's dispute of such information is suppressed or deleted from the entire File and that it does not subsequently reappear on that Consumer's Consumer Report; provided, however, that if, after Trans Union has deleted such information from the File, and Trans Union reverifies such information, Trans Union may reinsert such information in the File and report such information on subsequent Consumer Reports concerning that Consumer if, and only if, Trans Union advises the Consumer in writing that the information has been reinserted.

18. Where a Consumer has disputed the status of information contained in a tradeline in the Consumer's Report,

~15~

and the disputed information as reported cannot be verified, either because there is no response to Trans Union's verification request or the source verifies the Consumer's version of the disputed information is correct, employ a methodology to ensure that when the disputed information is corrected, the entire tradeline containing the disputed information is not deleted from the Consumer Report.

19.   Make clear and conspicuous disclosure to Consumers, (consistent with Trans Union's current practice at the time of disclosure) in connection with any reinvestigation in which an item has been deleted or corrected, of the Consumer's right, pursuant to section 611(d) of the FCRA (15 U.S.C. §1681i(d)), to request Trans Union to furnish notification to users of Consumer Reports who have received a Consumer Report from Trans Union for that Consumer, within the past two (2) years for employment purposes or within the past six (6) months for any other purpose, that an item has been deleted or corrected.

20.   Within 120 days of the date of this Order and for a period of four (4) years from the date of this Order, make clear and conspicuous written disclosure at the time Trans Union provides a Consumer Report in writing to a Consumer of the Consumer's right to dispute the completeness or accuracy of any information on the Consumer Report and to have such information changed or deleted if it cannot be reverified, unless the Consumer's dispute is frivolous or irrelevant.

21. Within twelve (12) months of the date of this Order, evaluate, through the products of consumer research, to be conducted by an appropriately qualified outside consultant selected by Trans Union, whether the format of the Trans Union Consumer Report may be made easier for a Consumer to read and understand and, within the same time period, implement in good faith reasonable changes, if any. For a period of four (4) years from the date of this Order, Trans Union shall notify the States' Designated Representatives if it intends to make significant changes to such Consumer Report disclosure format, and shall not make any such change unless it believes in good faith that the change will not make such Consumer Report more difficult for a Consumer to read or understand.

22. Disclose risk scores in a form and manner that complies with such comments or guidelines as may be issued by the Federal Trade Commission.

23. Require in Trans Union's contracts with those who obtain Consumer Reports from Trans Union in the form of lists developed through Prescreening that a firm offer of credit be made to each person to whom an offer is mailed. Further, the Trans Union salesperson who sold the Prescreened list shall ensure that a letter is or has previously been sent to the purchaser of the list informing the purchaser of the Federal Trade Commission Commentary regarding Prescreening and requesting a copy of the mailing which will extend the offer of credit. The mailing piece, if available, as well as any

available information as to the purchaser's compliance with the Federal Trade Commission guidelines, shall be reviewed by appropriate Trans Union personnel.

24. Within ninety (90) days of the date of this Order, advise its Affiliates that it has entered into this agreement and in a letter to each Affiliate, which shall be accompanied by a copy of this Order, request and encourage the Affiliate to comply with the provisions of this Order. In the event that Trans Union contracts with any Affiliate to perform the disclosure and reinvestigation responsibilities of such Affiliate under the FCRA, Trans Union will comply in all respects with the undertakings of this Order in connection with the services so performed for such Affiliate.

25. For four (4) years following the date of this Order, report annually in writing to the States' Designated Representatives:

a. A summary of the reports concerning Mixed Files produced under paragraph H.14(a)(v);

b. The approximate total number of Consumer Reports issued by Trans Union to Consumers in the preceding calendar year;

c. The total number of Consumers who conveyed disputes relating to the contents of their Consumer Reports in the preceding calendar year;

d. The approximate total number of disputed items in the preceding calendar year; and

-18-

e.   The total number of disputes by Trans Union's dispute type code in the preceding calendar year.

26.  Cause a copy of this Order to be delivered to all present and future Trans Union management and supervisory personnel.

27.  For the five (5) year period following the date of this Order, notify the Designated Representatives of the States in writing of any dissolution, assignment or sale of Trans Union which may affect compliance with this Order, upon the effective date of such dissolution, assignment or sale or the public announcement thereof, whichever comes first.

H.   If during the effective period of this Order, federal legislation is enacted which is contrary to the requirements or duties imposed upon Trans Union by this Order, then any such provisions of this Order will become null and void upon the effective date of such legislation, except where existing legislation of one of the States, which is not preempted by federal legislation, imposes the same requirements or duties upon Trans Union, in which case the provision(s) of this Order are null and void except as to that State.  If state legislation is enacted which is contrary to the requirements or duties imposed upon Trans Union by this Order, then any such provisions of this Order will become null and void, as to that State only, upon the effective date of such legislation.

-19-

I.   The State(s) shall not initiate or join in any litigation against Trans Union for a breach of this Order unless:  1) the State(s) have advised Trans Union in writing of an alleged breach of this Order; 2) the notification referred to in subsection 1 specifically states the provision(s) of the Order which are alleged to have been breached by Trans Union and the specific acts or omissions of Trans Union which are alleged to constitute the breach; 3) the notification referred to in subsection 1 is addressed to:  Oscar M. Marquis, Vice President and General Counsel, Trans Union, 555 W. Adams, Chicago, IL 60661 and shall be sent via United States Mail, return receipt requested; and 4) counsel for the State(s) and Trans Union have met and conferred.

J.   All information designated as proprietary by Trans Union shall remain confidential and shall not be disclosed except as necessary to enforce this Order, or as required by court order or state law.  In the event of a disclosure to be made pursuant to court order or state law, the State(s) shall inform Trans Union in writing of such request, addressed to: Oscar M. Marquis, Vice President and General Counsel, Trans Union, 555 W. Adams, Chicago, IL 60661 via United States Mail.

K.   Trans Union shall pay to the States the sum of $220,000, to be distributed as they may determine, as the States' costs in connection with this matter.

ENTER:

*James B Zagel*

United States District Judge

Dated: *10-26-92*

0436h

-21-