IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ALEJANDRO ABRAHAM LOPEZ, JR.,
*Individually and on behalf of all*
*similarly situated individuals,*

                    Plaintiff,

          v.                              Civil Action No. 1:12-cv-902 (LO/JFA)

TRANS UNION, LLC,

                    Defendant.

_____

ALEJANDRO LOPEZ, SR.,
*Individually and on behalf of all*
*similarly situated individuals,*

                    Plaintiff,

          v.

                                          Civil Action No. 1:12-cv-1325 (LO/JFA)

TRANS UNION, LLC,

                    Defendant.


**MEMORANDUM IN SUPPORT OF TRANS UNION'S MOTION FOR JUDGMENT ON
THE PLEADINGS AS TO COUNTS ONE AND TWO OF PLAINTIFFS'
CONSOLIDATED AMENDED CLASS COMPLAINT**

## I.   INTRODUCTION

        In their Consolidated Amended Class Complaint (the "Complaint"), plaintiffs

Alejandro A. Lopez, Jr. ("Lopez Junior") and Alejandro A. Lopez, Sr. ("Lopez Senior")

(together, "Plaintiffs") assert various claims against defendant Trans Union, LLC ("Trans

Union") arising from the alleged "mixing" of Plaintiffs' credit files, which allegedly resulted in

information related to each plaintiff being included in the other's credit reports.  Among other

things, Plaintiffs allege that by failing to match Plaintiffs' credit information based on all nine

digits of their Social Security Numbers ("SSNs"), Trans Union willfully violated the

"permissible purpose" provisions of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x

(the "FCRA").  The first seven digits of Plaintiffs' nine-digit SSNs are identical.  Lopez Junior's

SSN ends in -62 and Lopez Senior's ends in -59.  (See, e.g., Compl., Ex. 3.)

Specifically, Plaintiffs claim that Trans Union violated 15 U.S.C. § 1681b(a)(3), which

forbids a consumer reporting agency from delivering a report unless it "has reason to believe"

that the requesting party "intends to use" the report for a permissible purpose.[1]  Plaintiffs also

claim that Trans Union violated 15 U.S.C. § 1681e(a) by failing to "maintain reasonable

procedures designed . . . to limit the furnishing of consumer reports" to requesters who have a

permissible purpose for receiving them.  These provisions are designed to fulfill the FCRA's

statutory goal of achieving "respect for the consumer's right to privacy."  See 15 U.S.C.

§ 1681(a)(4).  As explained below, the factual allegations of the Complaint implicate no privacy

concerns, and thus do not trigger the FCRA's "permissible purpose" provisions.  Accordingly,

these claims—which Plaintiffs purport to assert both individually and on a class basis—are

without merit.[2]

_____

[1] Permissible purposes include, but are not limited to, the requester's evaluation of a credit
application or some other legitimate business need.  See 15 U.S.C. § 1681(b)(a)(3)(A) and (F);
Federal Trade Commission, 40 Years of Experience With the Fair Credit Reporting Act:  An
FTC Staff Report With Summary of Interpretations 40-54 (July 2011) ("FTC Staff
Interpretations") (Attached as Exhibit A to this Memorandum).

[2] This Motion is limited to Plaintiffs' "permissible purpose" claims, which are asserted on
Plaintiffs' own behalf and on behalf of a putative class.  Plaintiffs also assert individual claims
based on Trans Union's alleged failure to follow reasonable procedures to assure maximum
possible accuracy in the preparation of Plaintiffs' credit reports and to properly conduct a
reinvestigation of their disputes.  See 15 U.S.C. §§ 1681e(b), 1681i(a).  Although Trans Union

        First, contrary to Plaintiffs' theory of the case, the "permissible purpose" provisions of

the FCRA regulate only who may receive a consumer report, not the content of the report itself.

There is no question that Trans Union had reason to believe that the persons who requested

Lopez Junior's reports intended to use the information they requested in connection with credit

transactions involving Lopez Junior, and that that the persons who requested Lopez Senior's

reports intended to use the information they requested in connection with credit transactions

involving Lopez Senior.  Thus, regardless of the accuracy of the reports (which is regulated

solely under 15 U.S.C. § 1681e(b)), Trans Union had "reason to believe" that each requestor

intended to use each report for a permissible purpose.  Thus, no violation of the FCRA's

permissible purpose provisions occurred.

        Second, even if Plaintiffs' interpretation of the FCRA were correct, Plaintiffs' claims for

"willful" noncompliance with the FCRA fail because Trans Union's interpretation of the

statutory requirements in this regard is not objectively unreasonable, as is required to state a

claim for a willful violation of the FCRA.  See 15 U.S.C. § 1681n; Safeco Ins. Co. v. Burr, 551

U.S. 47, 59-60, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).  Trans Union's interpretation is

supported by the statutory text, no court of appeals has adopted Plaintiffs' interpretation of the

statute and no authoritative guidance supporting Plaintiffs' position has come from the FTC (or

the Consumer Financial Protection Bureau, which has taken over many of the FTC's

responsibilities under the FCRA).  To the contrary, the FTC generally endorsed, as a valid means

to improve the accuracy and completeness of consumer reports in general, the very matching

procedures challenged by Plaintiffs here.  Accordingly, because Plaintiffs pursue the permissible

purpose claims on a theory of willful violation (as they must, because they attribute no actual

---

contends that its procedures are reasonable and that it conducted reasonable dispute
reinvestigations, these individual claims are not the subject of the present Motion.

damages[3] to these supposed violations), Trans Union is entitled to judgment on the pleadings on these claims.  No willful violation of the FCRA's permissible purpose provisions occurred.

Third, Plaintiffs cannot salvage their defective claims by seeking injunctive or declaratory relief.  Numerous courts, including courts in this district, have held that private injunctive and declaratory relief are not available remedies under the FCRA in either individual or class actions.  The reasoning in those cases is compelling and should be followed here.

Accordingly, Trans Union respectfully requests that the Motion be granted and judgment on the pleadings be entered on Counts One and Two.

## II.   BACKGROUND

### A.   Plaintiffs Allege the FCRA Is Violated by Allowing Less-Than-Perfect SSN Matching.

Trans Union is a consumer reporting agency engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.  (Compl. ¶¶ 8-9.)[4]  Plaintiffs are individual consumers and residents of the State of Virginia.  (Id. ¶ 7.)  The two Plaintiffs are father and son, they share the same name and their nine-digit SSNs are nearly, but not perfectly, identical.  Lopez Senior's SSN ends in -59, and Lopez Junior's ends in -62.

In or about July 2010, Lopez Junior obtained a copy of his Trans Union consumer disclosure.  (Id. ¶ 11.)[5]  Upon review, he discovered that the disclosure included 25 items that did

---

[3] Plaintiffs may recover for negligent violations of the FCRA only if they prove actual damages. 15 U.S.C. § 1681o.

[4] For purposes of this Motion, the allegations of the Complaint are taken at face value.  However, Trans Union has denied in its Answer many of the substantive allegations asserted by Plaintiffs.

[5] A consumer disclosure sets forth the contents of the consumer's "file," as defined in 15 U.S.C. § 1681a(g), in an accessible format, and contains more information than is set forth in a

not belong to him as well as inaccurate personal identifying information.  (Id.)  Lopez Junior

subsequently disputed the information on two occasions in 2010, and was advised that at least

one of the disputed items had been deleted.  (Id. ¶ 13.)  Later, in January 2013, he received a

copy of his Trans Union consumer report while applying to refinance his home mortgage.  (Id.

¶¶ 14-15.)  On this report he identified three items that did not belong to him.  (Id.)  On or about

June 29, 2012, after Lopez Junior disputed the additional accounts, Trans Union informed him

that all of the disputed accounts had been deleted.  (Id.)  Lopez Junior also alleges that, within

the past two years, Trans Union had provided his credit information to eleven entities with whom

he had no relationship or contact.  (Id. ¶¶ 15-16.)  According to the Complaint, these entities

requested consumer reports on Lopez Senior but were instead provided information for Lopez

Junior.  (Id. ¶ 30.)

 Lopez Senior alleges that he obtained a copy of his Trans Union consumer disclosure on

or about February 1, 2012.  (Id. ¶ 23.)  He alleges that this disclosure included items relating to

Lopez Junior.  (Id.)  The disclosure also indicated that information about accounts belonging to

him was transmitted to six entities from which Lopez Senior alleges he did not seek credit.  (Id.

¶¶ 15-16, 27.)  Rather, Lopez Junior had applied for credit from these entities.  (Id. ¶ 31.)

 In summary, Plaintiffs allege that when they applied for credit, their credit information

was mixed as a result of Trans Union's use of matching rules that do not mandate perfect

identity.  (Id. ¶ 33.)  For example, Plaintiffs allege that when a potential lender requests a

consumer report, Trans Union will furnish a report based only on a matching name and address

---

"consumer report" sold to third parties for purposes of evaluating a credit application.  See
15 U.S.C. § 1681g.  Only the consumer has access to the consumer disclosure.  See Johnson v.
Equifax, Inc., 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) ("A 'consumer report' is a report
prepared for third parties while a 'consumer disclosure' is the consumer reporting agency's file it
reveals to the consumer, not a third party.") (citing Spector v. Equifax Info. Servs., 338 F. Supp.
2d 378, 379 (D. Conn. 2004)).

instead of requiring an exact match for the full name, address, date of birth and social security number.  (Id.; see also id. ¶ 37.)  Plaintiffs contend that Trans Union should only deliver a consumer report when the requester supplies a perfectly matching SSN and date of birth.  (Id. ¶ 40.)

Plaintiffs purport to assert class claims for violation of 15 U.S.C. §§ 1681b(a) and 1681e(a) based on Trans Union's alleged practice of delivering a consumer report even if the SSN provided by the requesting party does not match perfectly on all nine digits.  Unless the requesting party submits a perfect match to all nine digits, Plaintiffs contend, the requesting party lacks a permissible purpose to receive any report.  Plaintiffs define the putative class as:

> All natural persons, for whom Trans Union's records note that a credit report was furnished to a third party on or after February 11, 2008 who requested a credit report and where that third party provided a nine digit social security number, but where Trans Union furnished in the credit report file data that matched to a different nine digit social security number.

(Id. ¶ 43.)

On their class claims, Plaintiffs seek statutory damages between $100 and $1,000 per class member, punitive damages, injunctive and declaratory relief and attorneys' fees and costs. (Id. ¶¶ 49, 51-52, 55-56.)  Plaintiffs do not seek any actual damages on their class claims and identify no actual damages resulting from the alleged violation of 15 U.S.C. § 1681b(a) and 1681e(a).  (Id.)

**B.  The Less-Than-Perfect SSN Matching Procedures Challenged in the Complaint Are Endorsed by the FTC.**

Of particular relevance to Plaintiffs' claims is a report provided to Congress by the FTC, in which the FTC generally endorsed the matching procedures challenged by Plaintiffs, including the use of partial SSN matching.  If perfect SSN matching were required, many consumers would be unable to obtain credit because significant amounts of true, relevant and helpful data

could not be associated with the consumer's credit file.  At Congress's request, the FTC

examined this exact issue, and concluded that it would be unwise to prohibit less-than-perfect

SSN matching.

Section 318 of the Fair and Accurate Credit Transactions Act of 2003, Pub. L. 108-159,

117 Stat. 1952 (the "FACT Act"), directed the FTC to conduct a study on ways to improve the

operation of the FCRA, including a review of

> (A) the efficacy of increasing the number of points of identifying
> information that a credit reporting agency is required to match to ensure that a
> consumer is the correct individual to whom a consumer report relates before
> releasing a consumer report to a user, including—
>
>> (i) the extent to which requiring additional points of such
>> identifying information to match would—
>>
>>> (I) enhance the accuracy of credit reports; and
>>>
>>> (II) combat the provision of incorrect consumer reports to
>> users;
>>
>> (ii) the extent to which requiring an exact match of the first and
>> last name, social security number, and address and ZIP Code of the
>> consumer would enhance the likelihood of increasing credit report
>> accuracy; and
>>
>>> (iii) the effects of allowing consumer reporting agencies to use
>> partial matches of social security numbers and name recognition software
>> on the accuracy of credit reports . . . .

FACT Act § 318 (15 U.S.C. § 1681 note) (emphasis supplied).  In preparing its report, the FTC

was required to "consider the extent to which such requirements would benefit consumers,

balanced against the cost of implementing such provisions," and to include "a detailed summary

of the findings and conclusions of the study . . . , together with such recommendations for

legislative or administrative actions as may be appropriate."  Id.

The FTC delivered its report to Congress in December 2004.  See FTC, Report to

Congress Under Sections 318 and 319 of the Fair and Accurate Credit Transactions Act of 2003

(Dec. 2004) (the "FTC Report") (Attached as Exhibit B to this Memorandum).  Section IV of the

FTC Report sets forth the FTC's analysis of requiring an exact match on name, SSN, address and

zip code, and disallowing partial matches on SSN and the use of name recognition software.  See

id. at 35-55 (Ex. B).  Ultimately, the FTC declined to make any legislative or administrative

recommendations, finding that the cost of the data matching proposals could exceed their

benefits both at the file building stage as well as at the file retrieval stage.  See FTC Report at vii,

49-53 (Ex. B).

> As the FTC explained:

> The benefit of the proposed "exact" match rule [for purposes of file building]
> would stem from a decrease in mixed files, serving the proposal's purpose to
> enhance the accuracy of consumer reports. Mixed files are not always harmful
> to consumers, but when the information is harmful, a consumer may be denied
> credit or offered less favorable terms because of information that in fact
> belongs to someone else. . . .

> The proposed "exact" match requirement would decrease the completeness of
> consumer reports, however, and this has real costs for consumers. When files
> are incomplete, an individual consumer may suffer because his or her
> consumer file is missing information that would demonstrate creditworthiness.
> The decrease in completeness would be most severe for consumers whose
> files are relatively difficult to link – for example, consumers who move often,
> who change their names, or whose names or other identifying information are
> particularly prone to data-entry errors.  A reduction in completeness will also
> harm the system as a whole by reducing the information available for making
> credit decisions.  Currently, a relatively positive credit history predicts a low
> default risk, making it a very valuable signal of creditworthiness.  If creditors
> knew that information might be missing from a consumer report, they would
> find a good consumer report much less predictive, which could lead to higher
> expected default rates, increased interest rates, and/or a decrease in the
> amount of credit extended to consumers.

> . . .

> The potential benefit of the proposed "exact" match requirement [for purposes
> of file retrieval] would be to decrease the provision of the wrong consumer's
> file to users and to impede identity theft, thereby meeting the proposal's goal
> to combat the provision of incorrect consumer reports to users.  The potential
> costs would be an increase in the frequency with which a user's request does
> not return any file, which would, at a minimum, cause confusion,

> inconvenience, and delay for some consumers seeking credit.  Also,
> consumers would likely be forced to provide more information when applying
> for credit.  Although this might create additional challenges for identity
> thieves, it could also be costly for consumers who are reluctant to provide
> personal information because of concerns about privacy or identity theft.

FTC Report 49, 51 (footnotes omitted) (Ex. B).

With respect to SSNs in particular, the FTC expressly observed that "the SSN was not

designed for the purposes of data matching, . . . it is often missing from consumer credit

information, largely due to concerns about privacy and identity theft," and "errors are common in

recording SSNs." Id. at 38.  The FTC also observed that requiring Consumer Reporting

Agencies ("CRAs") to identify matching information based on complete SSNs, as Plaintiffs

request here, would both prevent CRAs from matching to the correct credit file in many

circumstances as well as result in erroneous matches that might otherwise be avoided.  In the

present case, seven out of nine digits of the Plaintiffs' SSNs matched, as well as their names.

The FTC considered this exact set of facts and in its report to Congress, the FTC deemed this

match protocol reasonable:

> Errors in SSNs may arise when a consumer does not know his or her number
> when filling out an application, from illegible handwriting or faulty
> transcription, or from mistyping the number when entering it into a database.
> Studies of unemployment insurance records suggest error rates in the SSN
> data entry process of between 0.5% and 4%.  The CRAs account for the
> possibility of errors by allowing "partial matches" on SSN – for example,
> when seven or eight of nine digits match, or when the entire number is shifted
> by one digit.  Such "partial matches" are allowed when other data elements
> match closely enough; the CRAs report that this happens between 1% and 2%
> of the time.
>
> . . .
>
> If 5% of inquiries include no valid SSN, and 1% include an SSN that is valid
> but incorrect, this translates to an estimated 250,000 inquiries each day for
> which an exact SSN match either could not be used or would yield the wrong
> consumer report.  This leads the CRAs to use other identifiers, such as name
> and address, to aid in matching.  As discussed above, the CRAs will rely on
> SSNs that do not match if the match on other data elements is strong enough.

> By contrast, if the SSN is an exact match, but other data elements do not match at all, the CRAs will not consider the records to match.

Id. at 39-40 (footnotes omitted) (emphasis supplied) (Ex. B).[6]

## III.   ARGUMENT

### A.   Standard on a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard that applies to motions to dismiss under Rule 12(b)(6).  Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  To survive a motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  Ashcroft, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).

---

[6] The district court can consider the FTC reports found in Exhibits A and B without converting this Motion into one for summary judgment.  For a Rule 12(b)(6) motion, the district court can consider, among other documents, "public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies."  Jackson v. City of Columbus, 194 F.3d 737 (6th Cir. 1999), abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)  The same should be true for these FTC reports and this Motion under Rule 12(c).  The FTC was charged with enforcing the FCRA, and its "Report to Congress" was in response to a request from Congress.

**B.     The Complaint Fails to State a Claim for Violation of 15 U.S.C. §§ 1681b or 1681e(a).**

     **1.     The FCRA's "Permissible Purpose" Provisions Do Not Address the "Mixed File" Claims Alleged Here.**

The FCRA's permissible purpose provisions were enacted by Congress, in part, "to protect consumer privacy."  See TRW Inc. v. Andrews, 534 U.S. 19, 23, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001).  Subject to certain exceptions not relevant here, a CRA may furnish a consumer report "under the following circumstances and no other: . . .  To a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . . ."  15 U.S.C. § 1681b. The FCRA similarly requires CRAs to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title" and prohibits furnishing a consumer report "to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title."  15 U.S.C. § 1681e(a).  Pursuant to 15 U.S.C. § 1681n, a CRA that "willfully" fails to comply "with any requirement imposed under this title with respect to any consumer" may be liable "to that consumer" for statutory damages between $100 and $1,000, punitive damages, costs of suit and reasonable attorneys' fees.

     Contrary to Plaintiffs' theory of the case, no "requirement imposed … with respect to any consumer" allows suit under §§ 1681b(a) or 1681e(a) by a person whose data is mistakenly mixed into another person's credit report.  Section 1681b(a) expressly allows a CRA to provide a consumer report as long as the CRA has reason to believe that the person requesting the report "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished . . . ."  15 U.S.C. § 1681b(a)(3)(A) (emphasis added).

From the perspective of the person requesting the report, the "consumer on whom the information is to be furnished" is the <u>applicant or accountholder intended by the requesting party to be the subject of a credit decision</u>.  Had Congress intended "consumer" in § 1681b(a)(3)(A) to refer to the individual to whom any erroneously mixed information relates, it would have said so, as it did elsewhere in § 1681b.  <u>Cf.</u> 15 U.S.C. § 1681b(a)(2) (authorizing release of consumer report "[i]n accordance with the written instructions of the consumer to whom it relates" (emphasis added)).  "A 'consumer report' is a report on a 'consumer' to be used for certain purposes involving <u>that</u> 'consumer.'"  FTC Staff Interpretations at 20 (Ex. A).  Thus, the only "consumer report" that exists is the report on the <u>intended</u> subject; no "consumer report" is created with respect to any other person whose data might have erroneously found its way onto the intended subject's report.

Here, nothing suggests that any credit grantor took adverse action against Lopez <u>Senior</u> (or even knew Lopez Senior existed) when it was evaluating a credit application made by Lopez <u>Junior</u> (regardless of the source of each piece of data on the report), and conversely, nothing suggests that any credit grantor took adverse action against Lopez <u>Junior</u> (or even knew Lopez Junior existed) when evaluating an application made by Lopez <u>Senior</u>.  Each credit grantor had a permissible purpose to request a report in connection with the proposed credit transaction; that data was included that did not belong to the intended subject does not deprive the grantor of having a permissible purpose for making the request.

Plaintiffs' failure to plead a violation of § 1681b(a) also is fatal to their claims based on a violation of § 1681e(a).  <u>See</u> <u>Washington v. CSC Credit Services Inc.</u>, 199 F.3d 263, 268-69 (5th Cir. 2000) (holding that a plaintiff bringing a claim that a reporting agency violated the "reasonable procedures" requirement of § 1681e(a) must first show that the reporting agency

released the report in violation of § 1681b(a)).  Moreover, Trans Union is permitted to rely on subscribers' "blanket certification" that they have permissible purposes to request credit data; "it need not require the user to certify its purpose for each individual report obtained unless there is reason to believe the user may be violating its certification."  FTC Staff Interpretations at 66 (Ex. A).  Plaintiffs plead nothing to suggest that any recipient of any consumer report used it for any impermissible purpose or that Trans Union had any reason to disbelieve any user's certification that it would use reports only for permissible purposes.  Accordingly, Plaintiffs fail to plead any unreasonable procedures under § 1681e(a).

For the foregoing reasons, Plaintiffs' Counts One and Two fail to state a claim, and Trans Union is therefore entitled to judgment on the pleadings.

## 2. Trans Union Did Not "Willfully" Violate §§ 1681b(a) and 1681e(a) by Providing Credit Information Without Requiring Matching SSNs.

The permissible purpose claims also must be dismissed here because Plaintiffs pursue a theory of willful violation.  Their liability theory is both novel and in conflict with published FTC guidance.  This is alone sufficient to mandate rejection of the willfulness theory.

Although the FCRA does not define "willful," the United States Supreme Court has held that statutory penalties for "willful" noncompliance with the FCRA requires proof of either a knowing or reckless disregard of the law's requirement.  Safeco, 551 U.S. at 59-60.  Even if a defendant's interpretation of the law is mistaken, no statutory damages may be awarded unless that interpretation was "objectively unreasonable" in light of published appellate authority or regulatory guidance.  See id. at 69-70.

As the Supreme Court explained:

While we disagree with [defendant's] analysis, we recognize that its reading has a foundation in the statutory text . . . .

> This is not a case in which the business subject to the [FCRA] had the benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took.  Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC . . . .  Given this dearth of guidance and the less-than-pellucid statutory text, [defendant's] reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability.

Id. at 69-70.  Further, a defendant's subjective intent is not relevant to the analysis of whether its interpretation of a statute is objectively reasonable.  See Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 250 (3d Cir. 2012).  Rather, if "the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation," statutory damages may not be imposed on "a defendant who merely adopts one such interpretation."  Safeco, 551 U.S. at 70 n.20.

As discussed above, Plaintiffs' class claims fail because the FCRA does not impose any requirement "with respect to any consumer" whose credit information is included in another consumer's credit report.  Thus, a CRA may provide consumer reports containing information based on a partial match of SSNs or other information without violating § 1681b(a) or § 1681e(a) even if the information turns out to be sourced from another consumer.   However, even if Plaintiffs' interpretation of the statute were correct—that the term "consumer" in § 1681b(a) refers to the consumer whose information is mixed and renders any instance of a "mixed" file due to a partial SSN match actionable by that individual—Plaintiffs' claim for "willful" noncompliance with the FCRA would fail because Trans Union's interpretation of the statutory requirements in this regard is not objectively unreasonable generally, and was not objectively unreasonable here, given the identity of the two Plaintiffs' names and the near-identity of their SSNs (matching on seven out of nine digits).

Plaintiff alleges that matching on seven out of nine SSN digits is unreasonable because in other contexts (such as with respect to a request from a consumer for information contained

within his own file) Trans Union requires a higher level of matching to return data.  See Compl.

¶ 33.  This allegation provides no reason to disregard the FTC's findings that partial SSN

matching is appropriate in the context presented here.  To the contrary, the FTC issued different

regulations governing the circumstances when a consumer requests his own file data, and these

regulations are specifically designed to protect consumer privacy and reduce the likelihood of

identity theft.  See 16 C.F.R. § 614.1 (promulgated by FTC Nov. 3, 2004); 12 C.F.R. § 1022.123

(FTC regulation reissued by CFPB Dec. 21, 2011).  The FTC expressly recognized that in this

context, a consumer may be required to provide "full 9 digits of Social Security Number."  16

C.F.R. § 614.1(b)(1); 12 C.F.R. § 1022.123(b)(1).[7]  However, the FTC also recognized – and the

Complaint fails to address this – that where a consumer is unable to provide his SSN, he may

nonetheless obtain his file disclosure by submitting "[a]dditional proof of identity," which may

include "[c]opies of government issued identification documents, utility bills, and/or other

methods of authentication of a person's identity which may include, but would not be limited to,

answering questions to which only the consumer might be expected to know the answer."  16

C.F.R. § 614.1(b)(2); 12 C.F.R. § 1022.123(b)(2).  In other words, the FTC engaged in a careful

balancing of the interests here, allowing different procedures in different contexts.[8]  Moreover,

_____

[7] Risk of identity theft resulting from providing consumer reports to lenders is addressed
separately, in connection with FTC requirements that consumer reporting agencies properly
credential users of reports to ensure that reports are used only for permissible purposes.  See FTC
Staff Interpretations at 65 ("Procedures to Limit Disclosure Solely to Users With Permissible
Purpose") (Ex. A).

[8] The Court should wholly disregard Plaintiffs' allegations relating to a two-decade-old consent
decree, which does not address SSN matching criteria at all.  See Compl. ¶¶ 36, 40 & Ex. 13.
The consent decree expressly prohibits private parties like Plaintiff from relying upon it or
offering it as evidence against Trans Union:  "This Order shall not be enforceable by any third
parties.  Other than with respect to a proceeding or action in this court by any of the State(s)
against Trans Union, neither this Order nor any provision thereof shall be offered or received in
evidence against or on behalf of Trans Union in any action or proceeding of any kind or nature,

-15-

the CFPB reissued the original FTC regulation without change. 76 Fed. Reg.79308, 79309, 79335 (Dec. 21, 2011). Because Trans Union is alleged only to have done what the FTC and CFPB permit, no claim for a willful violation of the statute may be pursued.

As in Safeco, Trans Union's interpretation is supported by the statutory text, no court of appeals has adopted Plaintiffs' own interpretation of the statute, and no authoritative guidance supporting Plaintiffs' position has come from the FTC. Indeed, to the contrary, the FTC has generally endorsed the use of partial SSN matches by CRAs as a means to improve the accuracy and completeness of consumer reports. See FTC Report 39-40, 50 (Ex. B); accord Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (rejecting claim that Trans Union violated the FCRA by providing credit reports for plaintiff's brother based on partial match of SSN because "Trans Union was entitled to program its computer to select any file whose identifiers closely matched those contained in the creditor's request for information"); see also id. at 664 (holding that plaintiff "cannot possibly obtain punitive damages" on FCRA claims arising from mixed files). The FTC explained at length that less-than-perfect matching rules, on balance, benefit consumers by allowing more complete credit information to be delivered, given

---

or otherwise used as evidence or an admission of any fact or acknowledgement of liability of any kind by Trans Union." Compl. Ex. 13, Recital C; see also Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 750, 95 S. Ct. 1917, 1932, 44 L. Ed. 2d 539 (1975) ("a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it"); United States v. FMC Corp., 531 F.3d 813, 821 (9th Cir. 2008) (government consent decree not usable by third parties to impose liability against signatory to decree); Price v. Trans Union, L.L.C., 839 F. Supp. 785, 812 (E.D. Pa. 2012) (holding that the consent decree cannot be used against Trans Union for any purpose). Indeed, even if the consent decree lacked Recital C, it could not be considered here because it is a settlement, and thus subject to Federal Rule of Evidence 408. Similarly, other lawsuits against Trans Union cited in the Complaint did not address the SSN issue presented here or assert the "permissible purpose" theory now presented. These allegations are completely irrelevant and should be disregarded under Federal Rules of Evidence 403 & 404(b). Plaintiffs cite no authority declaring that Trans Union violates Sections 1681b(a) or 1681e(a) by allowing seven out of nine digit SSN matching, which the FTC recognizes to be reasonable.

the highly inconsistent manner in which SSN data is provided to consumer reporting agencies.

To subject Trans Union to the risk of statutory or punitive damages will effectively force Trans

Union to reject a procedure that FTC recognized is an appropriate one, and the consequence will

be "an increase in the frequency with which a user's request does not return any file, which

would, at a minimum, cause confusion, inconvenience, and delay for some consumers seeking

credit.  Also, consumers would likely be forced to provide more information when applying for

credit."  See FTC Report 51.  Under Safeco, willfulness liability cannot be imposed under the

FCRA unless the defendant is acting directly contrary to pellucid (crystal-clear) authority from

unquestionably authoritative sources. See Safeco, 127 S. Ct. at 2216.  Here, by contrast, Plaintiff

challenges a procedure that was expressly considered and recognized by the FTC as reasonable.

As a matter of law, the willfulness theory of liability must fail.

Accordingly, Plaintiffs' Counts One and Two fail to state a claim for a "willful" violation

of the FCRA, under § 1681n, and must be rejected as a matter of law.

### 3.    Plaintiffs Cannot Obtain Declaratory or Injunctive Relief.

Plaintiffs also may not seek declaratory or injunctive relief, as the FCRA forbids private

plaintiffs from seeking these remedies.  The FCRA gives FTC (and now CFPB) authority to

make compliance-related rules, and to allow private plaintiffs to seek to impose such rules via

injunctive or declaratory relief claims improperly interferes with the regulatory regime laid out in

the statute.  This principle is particularly important here, where Plaintiff's liability theory runs

directly afoul of the conclusions of the FTC study directed by Congress.

Section 618 of the FCRA grants federal courts jurisdiction over "[a]n action to enforce

any liability created under this subchapter."  15 U.S.C. § 1681p (emphasis added).  In turn, the

FCRA's civil liability provisions, 15 U.S.C. §§ 1681n and 1681o, expressly refer to damages and

attorneys' fees but do not authorize injunctive relief.  By contrast, the FCRA elsewhere expressly

authorizes injunctive relief where it is available.  See, e.g., 15 U.S.C. §§ 1681s(a)(1), (b)(1)

("[c]ompliance with the requirements imposed under [the FCRA] shall be enforced" by the FTC

or CFPB), 1681u(m) (in actions against the United States, authorizing claims for actual, statutory

and punitive damages and stating that "[i]n addition to any other remedy contained in this

section, injunctive relief shall be available").  In light of these provisions, numerous courts,

including courts in this district, have held that private injunctive relief is not an available remedy

under the FCRA in either individual or class actions.  See Washington, 199 F.3d at 268-69

(holding there is no private right to seek injunctive relief under the FCRA); Bleynat v. Trans

Union LLC, 2012 U.S. Dist. LEXIS 92016 (W.D.N.C. July 2, 2012) (following Washington);

Bumgardner v. Lite Cellular, Inc., 996 F. Supp. 525, 527 (E.D. Va. 1998) (holding that

"Congress's failure to include injunctive relief as a potential remedy, combined with Congress's

express delegation of enforcement of the FCRA to the FTC, clearly indicates that Congress did

not intend injunctive relief as a remedy"); Hintz v. Experian Info. Solutions, Inc., No.

3:10CV535-HEH, 2010 WL 4025061, at *6 (E.D. Va. Oct. 13, 2010) ("injunctive relief is not

available to plaintiffs under the FCRA."); White v. First Am. Registry, Inc., 378 F. Supp. 2d 419,

424 (S.D.N.Y. 2005) (collecting cases and concluding that the FCRA does not authorize private

actions for declaratory or injunctive relief).  Declaratory relief similarly is not available to

private plaintiffs asserting FCRA claims, for the same reasons.  See Washington, 199 F.3d at

269-70; In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 340 (N.D. Ill. 2002).  Judgment

on the pleadings should be entered as to the injunctive and declaratory relief claims.

## IV.   CONCLUSION

For the foregoing reasons, Trans Union respectfully requests that the Motion be granted

in its entirety, and judgment on the pleadings be entered in its favor on Counts One and Two.

Respectfully submitted,

/s/_____

Michael R. Ward
Virginia bar number 41133
Attorney for Trans Union LLC
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218
Telephone: (804) 344-8300
Facsimile: (804) 344-8359
mward@morrismorris.com

*and*

Paul L. Myers, ***Pro Hac Vice***
Texas Bar Number 14765100
Attorney for Trans Union LLC
Strasburger & Price LLP
2801 Network Blvd., Suite 600
Frisco, TX 75082
Telephone: (469) 287-3903
Facsimile:  (469) 227-6567
paul.myers@strasburger.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded on the 12 day of April, 2013, to all counsel of record by electronic mail and US Mail as follows:

| | |
|---|---|
| Leonard Anthony Bennett | Kristi Cahoon Kelly |
| lenbennett@cox.net | kkelly@siplfirm.com |
| Susan M. Rotkis | Andrew J. Guzzo |
| srotkis@clalegal.com | aguzzo@siplfirm.com |
| Consumer Litigation Assoc PC | Surovell, Isaacs, Petersen & Levy, PLC |
| 763 J Clyde Morris Blvd, Ste 1A | 4010 University Dr., Ste 200 |
| Newport News, VA 23601 | Fairfax, VA  22030 |

Matthew J. Erausquin
matt@clalegal.com
Janelle Elene Mason
janelle@clalegal.com
Casey Shannon Nash
casey@clalegal.com
Consumer Litigation Assoc PC
1800 Diagonal Road, Ste 600
Alexandria, VA 22314

I further certify that I will cause a copy of the foregoing Motion and corresponding NEF by electronic mail on the following non-filing user:  None.

/s/_____
Michael R. Ward
Virginia bar number 41133
Attorney for Trans Union LLC
Morris & Morris, P.C.
P.O. Box 30
Richmond, VA 23218
Telephone: (804) 344-8300
Facsimile: (804) 344-8359
mward@morrismorris.com